UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Lance Phillip Wickner,

    Plaintiff,

 vs.         REPORT AND RECOMMENDATION

Jessica Symmes, Warden,
Mark Thielen, Lcie Stevenson,
Norris Blackmon, Religious
Service Coordinator, and
Stephanie Hanson, Lieutenant,

    Defendants.   Civ. No. 05-2664 (DWF/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

I. <u>Introduction</u>

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the Motion of the Defendants to Dismiss, or in the Alternative, for Summary Judgment, and upon the Motion of the Plaintiff for a Temporary Restraining Order or Preliminary Injunction. For these purposes, the Plaintiff appears <u>pro se</u>, and the Defendants appear by Mark B. Levinger, Assistant Minnesota Attorney General. For reasons which follow, we recommend that the Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment, be

granted, and that the Plaintiff's Motion for a Temporary Restraining Order or Preliminary Injunction be denied.

## II.  Factual and Procedural Background

The Plaintiff, who is a Minnesota State prisoner, commenced this action under Title 42 U.S.C. §1983, alleging that the Defendants violated his Federal constitutional rights, while he was being detained at the Minnesota Correctional Facility, in Oak Park Heights ("MCF-OPH").   Specifically, the Plaintiff alleges that his right to freedom of religion, under the First Amendment of the United States Constitution, was violated by the Defendants' refusal to permit him to practice two (2) aspects of his Native American religion -- smudging and pipe ceremony -- in his cell in the Segregation Unit of the Correctional Facility.[1]  As a result of those alleged violations, the Plaintiff is seeking declaratory and injunctive relief, as well as actual and punitive damages from each of the named Defendants.[2]   The Plaintiff's Complaint was signed

---

[1]The Plaintiff alleges only a violation of his First Amendment rights, and does not bring a claim under the Religious Land Use and Institutionalized Persons Act ("RLUPA"), Title 42 U.S.C. §2000cc-1(a)(1)-(2).

[2]Although the Plaintiff's original Complaint named the Defendants in their individual and official capacities, see, Docket No. 1, his Amended Complaint is brought against the Defendants only as officials of MCF-OPH.  See, Docket No. 16.

- 2 -

"under penalty of perjury," as being "true to the best of [the Plaintiff's] information, knowledge and belief." Amended Complaint, Docket No. 16, at 7.

The Plaintiff was admitted to the Department of Corrections' system on March 19, 2001, after a conviction for felony escape. See, Defendant's Memorandum in Support, Docket No. 26-1, at 2; Affidavit of Stephanie Hanson, Docket No. 30-1, at 1, ¶2. He has been confined in the Segregation Unit of the Correctional Facility since August of 2002, see, Affidavit of Lance Wickner, Docket No. 5, at 1, ¶1, and is currently scheduled to remain in segregation until early 2012. See, Affidavit of Stephanie Hanson, supra at 1, ¶3. The Plaintiff is a Native American, and is a registered member of the Leach Lake Band of Ojibwa. See, Affidavit of Lance Wickner, supra at 2, ¶8. He has practiced his Native American religion since he was six (6) years old, has attended pow-wows, sweat lodges, smudging and pipe ceremonies, and, when he was seventeen (17) years old, he lived with a Native American medicine man. Id. at 2, ¶¶9-11.

The Plaintiff claims that he has made several attempts to gain permission to participate in a smudging and pipe ceremony, while in the Segregation Unit at MCF-OPH. On June 13, 2005, the Plaintiff filed a request with the Defendant Stephanie Hanson ("Hanson") to have the ceremonies performed at the door of his cell by a

Native American resources person.   See, <u>Amended Complaint</u>, supra at 3, ¶7. According to the Plaintiff, Hanson denied his request, and cited a policy that bars Native American inmates, in the Segregation Unit, from participating in a smudging or pipe ceremony, except after a death of a member of the inmate's immediate family. <u>Id.</u> at 3-4, ¶8.  On June 15, 2005, the Plaintiff filed an informal grievance with the Defendant Norris Blackmon ("Blackmon"), who is the Religious Services Coordinator at MCF-OPH, which renewed his request to participate in a smudging and pipe ceremony.  <u>Id.</u> at 4, ¶9.  The request was denied on June 17, 2005.  <u>Id.</u> at ¶10.

The Plaintiff then sent an informal grievance to the Defendant Lcie Stevenson ("Stevenson"), who is the Program Director at MCF-OPH, asking for a change in the policy barring inmates in the Segregation Unit from participating in smudging and pipe ceremonies.  The informal grievance  was denied, as was a subsequent appeal to Assistant Warden Mark Thielen ("Thielen").  <u>Id.</u> at ¶¶11-15.  After having his request denied by Warden Lynn M. Dingle ("Dingle"), the Plaintiff filed a formal grievance on July 27, 2005, which was dismissed by Stevenson on August 8, 2005.  <u>Id.</u> at ¶¶17-21.  Jessica Symmes ("Symmes") replaced Dingle in August of 2005, as the Warden at MCF-OPH, and the Plaintiff renewed his informal grievance on October 9, 2005, but it was again denied.  <u>Id.</u> at ¶¶22-25.

- 4 -

<u>Discussion</u>

A.   <u>The Motion of the Defendants to Dismiss, or for Summary Judgment</u>.

1.   <u>Standard of Review</u>.  Summary Judgment is not an acceptable means of resolving triable issues, nor is it a disfavored procedural shortcut when there are no issues which require the unique proficiencies of a Jury in weighing the evidence, and in rendering credibility determinations.  See, <u>Wallace v. DTG Operations, Inc.</u>, 442 F.3d 1112, 1118 (8th Cir. 2006), citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 327 (1986); <u>Midwest Oilseeds, Inc. v. Limagrain Genetics Corp.</u>, 387 F.3d 705, 711 (8th Cir. 2004), cert. denied, 544 U.S. 977, 125 S. Ct. 1860 (2005).  Summary Judgment is appropriate when we have viewed the facts, and the inferences drawn from those facts, in a light most favorable to the nonmoving party, and we have found no triable issue.  See, <u>Smutka v. City of Hutchinson</u>, 451 F.3d 522, 526 (8th Cir. 2006), citing <u>Mayer v. Nextel W. Corp.</u>, 318 F.3d 803, 806 (8th Cir. 2003); <u>Eide v. Grey Fox Technical Servs. Corp.</u>, 329 F.3d 600, 604 (8th Cir. 2003); <u>Philip v. Ford Motor Co.</u>, 328 F.3d 1020, 1023 (8th Cir. 2003).  For these purposes, a disputed fact is "material" if it must inevitably be resolved and the resolution will determine the outcome of the case, while a dispute is "genuine" if the evidence is such that a reasonable Jury could return a Verdict for the nonmoving party.  See, <u>Anderson v. Liberty Lobby, Inc.</u>, 477

U.S. 242, 248 (1986); <u>Planned Parenthood of Minnesota/South Dakota v. Rounds</u>, 372

F.3d 969, 972 (8th Cir. 2004); <u>Fenney v. Dakota, Minnesota & Eastern R.R. Co.</u>, 327

F.3d 707, 711 (8th Cir. 2003).

As Rule 56(e) makes clear, once the moving party files a properly supported

Motion, the burden shifts to the nonmoving party to demonstrate the existence of a

genuine dispute.  In sustaining that burden, "an adverse party may not rest upon the

mere allegations or denials of the adverse party's pleading, but the adverse party's

response, by affidavit or as otherwise provided in this Rule, must set forth specific

facts showing that there is a genuine issue for trial."  <u>Rule 56(e), Federal Rules of</u>

<u>Civil Procedure</u>; see also, <u>Anderson v. Liberty Lobby, Inc.</u>, supra at 256; <u>Eddings v.</u>

<u>City of Hot Springs, Ark.</u>, 323 F.3d 596, 602 (8th Cir. 2003).  Moreover, the movant

is entitled to Summary Judgment where the nonmoving party has failed "to establish

the existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial."  <u>Celotex Corp. v. Catrett</u>, supra at 322; see also,

<u>Forest Park II v. Hadley</u>, 408 F.3d 1052, 1057 (8th Cir. 2005); <u>Mercer v. City of Cedar</u>

<u>Rapids</u>, 308 F.3d 840, 843 (8th Cir. 2002); <u>Hammond v. Northland Counseling Center,</u>

<u>Inc.</u>, 218 F.3d 886, 891 (8th Cir. 2000).  No genuine issue of fact exists in such a case

because "a complete failure of proof concerning an essential element of the

nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, supra at 323; see also, Sallis v. University of Minnesota, 408 F.3d 470, 474 (8th Cir. 2005); Davis v. U.S. Bancorp, 383 F.3d 761, 768 (8th Cir. 2004); Bell Lumber and Pole Co. v. United States Fire Ins. Co., 60 F.3d 437, 441 (8th Cir. 1995).

    2.   Legal Analysis.  The Defendants argue that the Amended Complaint should be dismissed in its entirety, because the Plaintiff's First Amendment rights have not been violated.  In the alternative, the Defendants suggest that the Plaintiff is barred from bringing any claims for damages against the Defendants,  both because the Plaintiff's Amended Complaint fails to raise any claims against the Defendants in their individual capacities, and because they are protected by the doctrine of qualified immunity.

    a.   The Plaintiff's First Amendment Claim.  The Supreme Court has held that "[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution."  Turner v. Safley, 482 U.S. 78, 84, 89 (1987), citing Procunier v. Martinez, 416 U.S. 396, 413 (1974); Bear v. Kautzky, 305 F.3d 802, 804 (8th Cir. 2002).  However, it is clear that a prisoner's First Amendment rights may be limited by regulations that are "reasonably related to legitimate penological interests." Turner v. Safley, supra at 84; Weiler v. Purkett, 137 F.3d 1047, 1050 (8th Cir. 1998);

Benzel v. Grammar, 869 F.2d 1105, 1108 (8th Cir. 1989), cert. denied, 493 U.S. 895

(1989).

As the Supreme Court explained, in Turner:

> Running a prison is an inordinately difficult undertaking
> that requires expertise, planning, and the commitment of
> resources, all of which are peculiarly within the province of
> the legislative and executive branches of government.
> Prison administration is, moreover, a task that has been
> committed to the responsibility of those branches, and
> separation of powers concerns counsel a policy of judicial
> restraint. Where a state penal system is involved, federal
> courts have, as we indicated in Martinez, additional reason
> to accord deference to the appropriate prison authorities.

Id. at 84-85; see also, Thornburgh v. Abbott, 490 U.S. 401, 409 (1989)("[S]uch a
standard is necessary if prison administrators, and not the courts, are to make the
difficult judgments concerning institutional operations.").

Here, the Plaintiff challenges the "unwritten policy" of MCP-Oak Park that denies

Native American inmates, who are housed in the Segregation Unit, the right to

participate in smudging or pipe ceremonies, except in the case of the death of a

member of the inmate's immediate family.  See, Amended Complaint, supra at 3, ¶¶3-

4.

As a threshold matter, "[i]n a claim arising under the First Amendment's Free

Exercise Clause, an inmate must first establish that a challenged policy restricts the

inmate's free exercise of a sincerely held religious belief."  Kind v. Frank, 329 F.3d

979, 980 (8th Cir. 2003), quoting Brown-El v. Harris, 26 F.3d 68, 69 (8th Cir. 1994); Youngbear v. Thalacker, 174 F. Supp. 2d 902, 914 (N.D. Iowa 2001).  We have no reason to doubt the Plaintiff's sworn statement, which attests to his long history of practicing the Native American religion, and we accept the sincerity of the Plaintiff's belief.  See, Affidavit of Lance Wickner, at 2, ¶¶9-11.  The Defendants, however, challenge that sincerity, based on the Plaintiff's possession of a Christian Bible in his cell, as well as his request for Christian publications from prison religious officials. Defendants' Memorandum in Support, supra at 9. The Plaintiff responds, however, that he requested items of Native American spirituality, such as publications and a medicine bag, but that they have not been provided by the Correctional Facility, see, Affidavit of Lance Wickner, supra at Exhibits 2-4, and that he had asked for the Bible, and Christian publications, "for knowledge and to pass time in segregation." Plaintiff's Memorandum in Opposition, supra at 3.

Our Court of Appeals has repeatedly recognized that ascertaining "[w]hether or not [a particular practice] is a sincerely held religious belief is a factual determination, so we much not quickly dismiss such claims on summary judgment by concluding that those believes are not genuine."  Murphy v. Missouri Depart. of Corrections, 372 F.3d 979, 983 (8th Cir. 2004), cert. denied, 543 U.S. 991 (2004),

citing Ochs v. Thalacker, 90 F.3d 293, 296 (8th Cir. 1996)("Courts must be cautious in attempting to separate real from fictitious religious beliefs."), citing Thomas v. Review Bd. of Ind. Employment Sec. Div., 450 U.S. 707, 713-16 (1981). Accordingly, for these purposes, "we assume that [the Plaintiff's] religious beliefs are sincerely held." Hamilton v. Schriro, 74 F.3d 1545, 1550 (8th Cir. 1996), cert. denied, 519 U.S. 874 (1996), citing Iron Eyes v. Henry, 907 F.2d 810, 813 (8th Cir. 1990).

"[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Love v. Reed, 216 F.3d 682, 690 (8th Cir. 2000), quoting Turner v. Safley, 482 U.S. 78, 89 (1987). In reconciling the competing interests of an inmate's constitutional interests, and the prison's need to regulate, "[w]e must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." Overton v. Bazzetta, 539 U.S. 126, 132 (2003). "The burden, moreover, is not on the State to prove the validity of prison regulations but on the prisoner to disprove it." Id. In reaching the proper balance, we necessarily apply the framework of analysis that was established in Turner v. Safley, supra at 89-91.

- 10 -

As the Supreme Court has recently reiterated:

> Turner [] sets forth four factors "relevant in determining the reasonableness of the regulation at issue." First, is there a "'valid, rational connection'" between the prison regulation and the legitimate governmental interest put forward to justify it."? Second, are there "alternative means of exercising the right that remain open to prison inmates"? Third, what "impact" will "accommodation of the asserted constitutional right * * * have on guards and other inmates, and on the allocation of prison resources generally"? And, fourth, are "ready alternatives" for furthering the governmental interest available?

Beard v. Banks, --- U.S. ---, 126 S.Ct. 2572, 2578 (2006), citing and quoting, Turner v. Safely, supra at 89-90 [specific citations omitted]; see also, Murphy v. Missouri Depart. of Corrections, supra at 982-83; Ortiz v. Fort Dodge Correctional Facility, 368 F.3d 1024, 1026 (8th Cir. 2004).

Applying the Turner factors, the Defendants argue that there is a valid, rational connection between MCF-OPH's policy, which bars inmates in the Segregation Unit from smudging and pipe ceremonies, except when there is a death in an inmate's immediate family, and the prison's legitimate penological interests in using the threat of segregation to deter and punish members of the inmate population. See, Affidavit of Stephanie Hanson, Docket No. 30-1, at 3, ¶8.

Specifically, the Defendants contend that MCF-OPH reasonably relies on the threat of reduced privileges in the Segregation Unit to induce inmates to rethink questionable behavior, and to serve as a form of deprivation or punishment for those

inmates who have violated the prison's regulations.  Id.  Our Court of Appeals has

accepted that the segregation of the inmate population can serve a legitimate

penological purpose, as follows:

> [S]olitary confinement is a disciplinary measure whose
> very essence is the deprivation of interests the first
> amendment protects:  association with the general prison
> population and communication with outsiders.  To promote
> the important government interest in maintaining discipline,
> officials must have available sanctions that impose
> incremental disadvantages on those already imprisoned.

Gregory v. Auger, 768 F.2d 287, 290 (8th Cir. 1985), quoting Daigre v. Maggio, 719
F.2d 1310, 1313 (5th Cir. 1983); see, e.g., Little v. Norris, 787 F.2d 1241, 1243 (8th
Cir. 1986)("The purpose of withholding personal mail is to make punitive isolation
unpleasant, and thereby discourage improper behavior and promote security within
the prison."); see also, Cutter v. Wilkinson, 544 U.S. 709, 722 (2005)(accommodation
of religious observances are not to be elevated over need to maintain order and safety
in the prison setting).

We accept the Defendants' argument that the policy barring residents of the

Segregation Unit from participating in a smudging or pipe ceremony in their cells is

supported by the legitimate need to prevent inmates from taking advantage of the

smell of burning sage, or the other herbs, and substances that are used in the smudging

ceremony, so as to mask the smell of burning marijuana or tobacco.  Defendant's

Memorandum in Support, supra at 11.  As the Supreme Court recognized, in Overton

v. Bazzetta, supra at 134, "[d]rug smuggling and drug use in prison are intractable

problems."

- 12 -

As a result, in <u>Chambers v. Wood</u>, 1999 WL 33832661 at *5 (D. Minn., March 12, 1999), the Court determined that a general rule, which prohibited smudging in cells, was reasonably related to the need to prevent and control the use of prohibited substances.  In particular, the Court explained:

> The rule prohibiting smudging was put into place because the odor of burning herbs may be used to mask the odors of other illegal substances being smoked, such as tobacco, marijuana, etc.  In particular, [the prison administrators] claim that the odor of burning sage is largely indistinguishable from, and may be used to mask, the odor of marijuana, a prohibited substance.

<u>Id.</u>

In <u>Chambers</u>, as here, smoking is prohibited in the prisoner's cells, as is the case for all Minnesota Correctional Facilities.  <u>Id.</u>  Other Courts have agreed.  See, <u>Tart v. Young</u>, 168 F. Supp.2d 590, 593 (W.D. Va. 2001)(the barring of smudging ceremonies in inmate's cells was reasonably related to legitimate government and penological interest of maintaining security and suppressing contraband); <u>Robinson v. Horn</u>, 2000 WL 1101351 at *5 (E.D. Pa., August 7, 2000)(same).

Similarly, Courts assessing the legitimacy of restrictions on pipe ceremonies have found that the need to monitor tobacco, which is also a prohibited substance among the inmate population at MCF-OPH, is reasonably related to legitimate security interests.  See, <u>Runningbird v. Weber</u>, 2005 WL 1363927 *3 (D.S.D., June

8, 2005)(regulation limiting amount of tobacco that could be possessed by a Native American inmate reasonably related to legitimate penological interest in security); Chambers v. Wood, supra at *7 (holding prison policy against exchanging tobacco except in limited Native American ceremonies reasonably related to legitimate objective of preventing violations of the system-wide ban on tobacco use); compare, Estep v. O'Dea, 82 F.3d 417 at *1 (6th Cir. 1996)(Table Decision)("Forbidding prisoners to possess alcohol, even to observe Holy Communion, is reasonably related to legitimate penological interests.").

Accordingly, as to the first element of the Turner test, we find that the infringement on the Plaintiff's First Amendment rights, which were imposed by the Defendants, serves a legitimate penological interest, as institutionalized security is "the most compelling governmental interest in a prison setting." Goff v. Graves, 362 F.3d 543, 549 (8th Cir. 2004), quoting Ochs v. Thalacker, supra at 296; see also, Wilkinson v. Austin, 545 U.S. 209, 227 (2005)(In the context of prison management, "[t]he State's first obligation must be to ensure the safety of guards and prison personnel, the public, and the prisoners themselves."); Overton v. Bazzetta, supra at 133 ("The regulations promote internal security, perhaps the most legitimate of penological goals * * *."), citing Pell v. Procunier, 417 U.S. 817, 823 (1974).

- 14 -

As to the second <u>Turner</u> factor, we are obligated to determine if, in view of the restrictions imposed by MCF-OPH's policy, the Plaintiff has an alternative means of exercising his First Amendment right to freedom of religion.  See, <u>Turner v. Safley</u>, supra at 89-90.  The "right" in question must be viewed "sensibly and expansively." <u>Iron Eyes v. Henry</u>, supra at 815, citing and quoting <u>Thornburgh v. Abbott</u>, 490 U.S. 401, 416 (1989).   In this context, Courts are required to consider the degree of infringement on an inmate's First Amendment rights when determining whether a prisoner's freedom of religion was violated.  See, <u>Holloway v. Pigman</u>, 884 F.2d 365, 367 (8th Cir. 1989), citing <u>O'Lone v. Estate of Shabazz</u>, 482 U.S. 342, 349 (1987). However, an inmate, who alleges that a policy violates his First Amendment rights, has the burden to "detail what the practice of his Native American religion requires" and, if he fails to meet this standard, then Summary Judgment is appropriate.  <u>Bettis v. Delo</u>, 14 F.3d 22, 23-24 (8th Cir. 1994), citing <u>Holloway v. Pigman</u>, supra at 367; see also, <u>Fox v. Erickson</u>, 46 F.3d 1135 *1 (8th Cir. 1995)(Table Decision)(affirming Summary Judgment when inmate failed to detail how accommodations provided by the prison interfered with his free exercise rights); <u>Stewart v. McGinnis</u>, 800 F. Supp. 604, 617-18 (N.D. Ill. 1992).  "The critical question for Turner purposes is whether the prison officials' actions deny prisoners their free-exercise rights without leaving

open sufficient alternative avenues for religious exercise." Goff v. Graves, supra at 549.

In Holloway, our Court of Appeals affirmed Summary Judgment as to the claim of a Native American inmate that his religious freedom had been unduly constrained by policies that prevented him from smudging, because he made only "scant and conclusory allegations" in his Complaint to indicate how being denied the ability to smudge prevented him from engaging in all aspects of his religion. Holloway v. Pigman, supra at 367; see also, Bettis v. Delo, supra at *23-24. Similarly, the Plaintiff has failed to identify in what way his First Amendment right to religious freedom is being unduly curtailed by MCF-OPH's policy. See, Amended Complaint, supra at 3, ¶2 (alleging only that the policy "violates plaintiffs [sic] right to freely practice his religion"). We can understand that the Plaintiff would prefer to engage in smudging, and pipe ceremonies, but he does not suggest why alternative religious practices, which are available to him, are not sufficient for his religious needs.

Moreover, the Defendants represent that other opportunities to practice Native American religion are available to the Plaintiff, but that he has neglected to take advantage of them. In his Affidavit, Blackmon attests that inmates in the Segregation Unit are permitted to have "just one religious item, which may be a book," although

"[m]ost Native American inmates who request religious items from [Blackmon] have requested medicine bags." <u>Affidavit of Blackmon</u>, <u>Docket No. 29-1</u>, at 2, ¶¶5,8.[3] Blackmon notes that inmates in the Segregation Unit are permitted to ask for additional religious items, and that he will loan those items to them if they are available, although they may have only one (1) item in their cell at any given time. <u>Id.</u> at ¶6.

The Plaintiff does not dispute that he is in possession of a Christian Bible, which qualifies as his religious item, but argues that, in the past, he has attempted, unsuccessfully, to obtain Native American publications, as well as a medicine bag, from Blackmon. <u>Affidavit of Lance Wickner</u>, supra at 3, ¶¶24-27, and Exhibit 2. Blackmon has admitted that the Correctional Facility is "very limited in Native American publications," <u>Affidavit of Lance Wickner</u>, supra at Exhibit 2, but has suggested to the Plaintiff that the Education Library might have Native American resources. <u>Id.</u> at Exhibit 3. While it is apparently true, as the Plaintiff argues, that

---

[3]The policy of MCF-OPH, which is included as an Exhibit to the Plaintiff's Affidavit, appears to provide that inmates in the Segregation Unit can possess both a religious book, and a religious medallion, rosary, or medicine pouch, with each item subject to the approval of the prison's Chaplain. See, <u>Affidavit of Lance Wickner</u>, Complex 5 Handbook, at supra, Exhibit 1, at 12. As neither party raised this issue in its briefing, we suggest no finding as to the total number of religious items that are permitted to an inmate in the Segregation Unit.

Segregation Unit inmates are not permitted to check out books from the Education Library, it appears that Blackmon, or some other Religious Services Coordinator, can bring those items to an inmate.  See, Affidavit of Gary Karash, Docket No. 28-1, at 2, ¶6; Affidavit of Blackmon, supra at 2, ¶6.

The Plaintiff does not attest that he has requested Blackmon to bring him Native American spirituality materials from the Education Library, and that those requests have been refused, nor does he claim that he cannot practice his religion without specific reading materials.  While the Plaintiff also argues that Blackmon failed to accommodate his request for a medicine bag, by his own admission the Plaintiff submitted that request in "May or June, 2006," which was approximately six (6) months after he filed his original Complaint.  See, Complaint, Docket No. 1.  In August of 2006, Blackmon informed the Plaintiff that his request had been approved, and would be forwarded to Native American volunteers, who were in attendance at the next sweatlodge at MCF-OPH.  Affidavit of Lance Wickner, supra at Exhibit 3.

Finally, the Plaintiff is free to pray, or to engage in other spiritual activities, in his cell, see Affidavit of Blackmon, supra at 2, ¶8, and may receive visits from Religious Resources persons whose names he identifies on his visitor request list, and whose visitation is approved.  Affidavit of Hanson, supra at 4, ¶12; Affidavit of

- 18 -

Stevenson, Docket No. 38, at 3, ¶9.  Of course, if the Plaintiff is unable to provide the names of appropriate Native Resources volunteers, then MCF-OPH is under no obligation to seek out such persons solely for the Plaintiff's benefit.  See, Cruz v. Beto, 405 U.S. 319, 322 n.2 (1972)(no constitutional violation if every sect in prison does not have identical facilities or personnel); Brown ex rel. Indigenous Inmates at N.D. State Prison v. Schuetzle, 368 F. Supp.2d 1009, 1021 (D.N.D. 2005)(holding that "the state is under no legal obligation to seek out or provide people" from the outside community to perform religious services for inmates); see also, Wilson v. Moore, 270 F. Supp.2d 1328, 1351-52 (N.D. Fla. 2003)(prison has no obligation to hire Native American spiritual leader or "drum up" volunteers to perform pipe ceremonies).  On the Record presented, we conclude that the Plaintiff has other acceptable alternatives to participate in his religion.  See, Murphy v. Missouri Dept. of Corrections, supra at 983 ("A prisoner need not be afforded his preferred means of practicing his religion as long as he is afforded sufficient means to do so."), citing Hammons v. Saffle, 348 F.3d 1250, 1256 (10th Cir. 2003).  Paraphrasing the Court, in Murphy, "although he cannot participate in [smudging and pipe ceremonies generally], as a solitary practitioner [the Plaintiff] can still study the scriptures and [Native American

religious] materials, pray, occasionally meet with [Native American] clergy, observe holy days, and worship in other ways." Id.

Turning to the third element of the Turner paradigm -- namely, the effect of the Plaintiff's requested accommodation on the guards, other inmates, and prison resources, see, Turner v. Safley, supra at 89-90 -- the Defendants assert that it would be extremely labor intensive for MCF-OPH staff to monitor smudging in individual cells, as they would have to determine whether an inmate was burning sage, or smoking marijuana, or both. Defendants' Memorandum in Support, supra at 13. They also argue that, "if certain inmates were permitted to burn herbs or smoke pipes in their cells, other inmates would want to burn other substances or smoke tobacco, which would cause staff additional difficulties," especially in light of the valuable nature of tobacco as a commodity of prison contraband. Id.

"When accommodation of an asserted right will have a significant 'ripple effect' on fellow inmates or on prison staff, courts should be particularly deferential to the informed discretion of correction officials." Turner v. Safley, supra at 90; Thornburgh v. Abbott, supra at 418 ("Where, as here, the right in question 'can be exercised only at the cost of significantly less liberty and safety for everyone else, guards and prisoners alike,' the courts should defer to informed discretion of

corrections officials."), citing <u>Turner v. Safley</u>, supra at 90, 92; see also, <u>Dawson v. Scurr</u>, 986 F.2d 257, 262 (8th Cir. 1993).  We find the Defendants' evidence to be convincing, as the smell of burning sage or tobacco would be virtually impossible for prison officials to contain, and would have the added potential to further litigation from inmates who are sensitive to airborne pollutants, or to instigate  unrest among inmates who are former smokers, and perceive favoritism.  See, <u>Affidavit of Stevenson</u>, supra at 2-3, ¶¶5, 7; <u>Helling v. McKinney</u>, 509 U.S. 25, 35 (1993)(finding prisoner can state cause of action for being exposed to excessive amounts of second-hand smoke); <u>Larson v. Kempker</u>, 414 F.3d 936, 940 (8th Cir. 2005); <u>Weaver v. Clarke</u>, 933 F. Supp. 831, 835-36 (D. Neb. 1996).

We find equally convincing the Defendants' evidence that the prison's staff would have to reallocate their time unnecessarily, if their policy on smudging, and pipe ceremonies, were altered as the Plaintiff requests.  The conduct of searches in the Segregation Unit would be "time consuming," if inmates could burn substances as the Plaintiff proposes, and the conduct of such searches "would drain staff resources." <u>Affidavit of Hanson</u>, supra at 3, ¶10; see also, <u>Overton v. Bazzetta</u>, supra at 135 ("Accommodating [the inmates'] demands would cause a significant reallocation of the prison system's financial resources and would impair the ability of corrections

officers to protect all who are inside a prison's walls."). "When such consequences are present, we are 'particularly deferential' to prison administrators' regulatory judgments." Overton v. Bazzetta, supra at 135, quoting Turner v. Safley, supra at 90.

Lastly, we must determine if some alternative exists, which would accommodate the Plaintiff's needs with a de minimis impact on MCF-OPH's legitimate penological interests. See, Turner v. Safley, supra at 89-90. MCF-OPH bears no burden to demonstrate that no reasonable alternative to their policy exists, so long as the policy at issue is not arbitrary or unreasonable. See, Thomas v. Gunter, 32 F.3d 1258, 1260 (8th Cir. 1994), citing O'Lone v. Estate of Shabazz, supra at 350; Hamilton v. Schriro, 74 F.3d 1545, 1551 (8th Cir. 1996)(dismissing prisoner's Complaint when he failed to point to an alternative that would give rise to only de minimis costs to prison officials). As the Court, in Turner, recognized, "prison officials do not have to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." Turner v. Safely, supra at 90-91.

In response to MCF-OPH's reluctance to allow smudging, because of the similarity of the smell of burning sage and marijuana, and the pipe ceremony, and because of the danger of introducing contraband tobacco into the inmate population,

the Plaintiff proposes that the smudging and pipe ceremony be performed immediately outside of his cell, with the half-smoked pipe being passed through the slot of his cell door under the supervision of an MCF-OPH staff member.   Affidavit of Lance Wickner, supra at 3, ¶¶24-35.  The Defendants counter that "a number of security issues * * * still remain," even with the Plaintiff's proposal, including the danger that the burning of sage and tobacco could be used to mask the smell of the smoking of marijuana and other drugs, the possibility of complaints from other prisoners, and the ease with which a prisoner could take and hide unburned tobacco to be later smoked or introduced into the prison economy.   Defendants' Reply Memorandum, Docket No. 37, at 4; Affidavit of Stevenson, supra at 2, ¶6.

Further, the cost of having guards, or other officials, diverted from their regular duties in order to supervise the smudging or pipe ceremonies outside of the Plaintiff's cell, and so as to assure that other inmates in the Segregation Unit are not taking advantage of the masking qualities of the burning sage and tobacco, by engaging in contraband drug use,  would constitute more than a de minimis burden.   See, Chambers v. Wood, supra at *5 (requiring prison personnel to be trained to recognize the difference between burning sage and cedar was not a de minimis burden on prison resources).   The Plaintiff's proposal would incur additional costs to MCF-OPH,

- 23 -

without any meaningful reduction in the security risks posed by the religious activities

he advocates.  In short, the Plaintiff's  proposed alternatives "do not go so far toward

accommodating the asserted right with so little cost to penological goals that they

meet Turner's high standard."  <u>Overton v. Bazzetta</u>, supra at 136.

Therefore, finding that all of the <u>Turner</u> factors are satisfied by the restrictions

on the Plaintiff's religious practices that he challenges, we recommend that Summary

Judgment be granted to the Defendants, and that the Plaintiff's Motion for injunctive

relief be denied.[4]

---

[4]Since we conclude that the Defendants committed no violation of the Plaintiff's constitutional rights, as he has alleged in his Amended Complaint, we have no legitimate basis to grant any injunctive relief, and we have no occasion to address the question of the Defendants' qualified immunity.  As our Court of Appeals explained, in <u>Hinshaw v. Smith</u>, 436 F.3d 997, 1004 (8th Cir. 2006):

> Qualified immunity protects public officials from personal liability under §1983 when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)(internal marks omitted).  We first address whether the facts alleged show that the state actor's conduct violated a constitutional right.  Davis v. Hall, 375 F.3d 703, 712 (8th Cir. 2004).  If that threshold question is answered in the negative, we need not proceed further, as the defendant is entitled to qualified immunity.

See also, <u>Davis v. Hall</u>, 375 F.3d 703, 712 (8th Cir. 2004)("If the answer to this first inquiry is no, courts do not delve further into the qualified immunity inquiry," but "instead, the defendant is entitled to qualified immunity, and the suit is not permitted

NOW, THEREFORE, It is –

RECOMMENDED:

1.     That the Plaintiff's Motion for a Temporary Restraining Order or Preliminary Injunction [Docket No. 20] be denied.

2.     That the Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment [Docket No. 24] be granted.


Dated:  January 5, 2007                    s/Raymond L. Erickson
                                           Raymond L. Erickson
                                           CHIEF U.S. MAGISTRATE JUDGE


### N O T I C E

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than January 23, 2007,** a writing which specifically identifies those portions of the Report to which objections are made and the bases for those objections.  Failure to comply

---

to proceed."), citing Saucier v. Katz, 533 U.S. 194, 200 (2001).

As a consequence, our analysis of the equitable relief question, as well as the presence of qualified immunity, proceeds no further.

with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of the Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than January 23, 2007,** unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.